USDC SCAN INDEX SHEET

















```
KSR    6/26/03    8:12
3:01-CV-01800    WESTBOURNE INTL INC V. ARROWHEAD GENERAL
*248*
*P/A.*
```

WESTON & McELVAIN LLP
Randy M. McElvain, (SBN 137046)
Richard C. Rey II, (SBN 193212)
888 West Sixth Street, 15th Floor
Los Angeles, California 90017
Telephone: (213) 596-8000
Facsimile: (213) 596-8039

Attorneys for Defendants and Counter-Claimants
ARROWHEAD GENERAL INSURANCE
AGENCY, INC., YOUZOOM, INC. and YOUZOOM
INSURANCE SERVICES, INC.

FILED
JUN 2 5 2003
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

NUNC PRO TUNC
JUN 2 3 2003

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTBOURNE INTERNATIONAL, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ARROWHEAD GENERAL INSURANCE AGENCY, INC., a Minnesota corporation YOUZOOM, INC., a California corporation, and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTION | CASE NO. 01 CV-1800 H (JFS)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION IN LIMINE RE ROBERT MILLS' VALUATION OF YOUZOOM SALES LEADS**<br><br>Date: July 14, 2003<br>Time: 10:30 a.m.<br>Ctrm: 4/1<br>Judge: Hon. Marilyn L. Huff |

-1-

01 CV 1800 H (JFS)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND FACTUAL BACKGROUND.

Defendants Arrowhead General Insurance Agency, Inc., Youzoom, Inc. and Youzoom Insurance Services, Inc. (defendants") seek an order excluding all evidence, testimony and opinions at trial that relate to plaintiff's claim for copyright damages based on a valuation by its expert of "sales leads" provided by Youzoom to its agents. [See Mr. Mills' Expert Report at ¶¶ 9-11 and Mr. Mills Supplemental Expert Report at ¶¶ 12-17 attached to Defendants' Application for an Order to Seal as Exhibits C & D, respectively; see Declaration of Richard C. Rey II ("Rey Decl") at ¶ 2.] This damages claim and Mr. Mills' valuation thereof are improper as a matter of law, insofar as they are inherently speculative, unreliable and cannot possibly be of any assistance to the trier of fact.

The "Youzoom Network" of agents is made up of hundreds of insurance agents and brokers that offer consumers the ability to obtained insurance quotes online through Youzoom.com. An insurance agent must first become a "member" of the Youzoom Network, which requires payment of a modest membership fee. Membership entitles the agent to various benefits including the availability of hosting a website that allows consumers to log on and request a quote on-line for auto insurance. In cases where a consumer may ask for a quote, but then decides not to buy a policy, Youzoom will send the applicant's information to the agent so that the agent can follow up with the applicant. It's a sales lead for the agent, albeit one involving a consumer who opted to not buy the insurance in the first place. Westbourne claims that the defendants should pay to Westbourne a considerable sum of money for what it claims is the "value" of these sales leads. Specifically, Westbourne, through its expert, claims that it should be paid over $600,000 alone for these leads, which it values at $3.50 per lead.[1]

The underlying flaw with this novel claim is that it represents neither actual damage to

---

[1] The only possible value to Arrowhead is based on commissions earned on policies sold by agents using these leads. [See relevant excerpts from the deposition of Robert Mills attached to the Rey Decl. as Exhibit A at pp. 139:18-140:6, 141:19-142:2.] The total sum of Arrowhead's commissions through July 2002, however, was only $11,655. It comes to no surprise that Mr. Mills dismisses this figure as being purportedly based upon flawed analysis. [See Exhibit C at ¶¶ 13-15.]

plaintiff's alleged copyright nor a recovery of defendants' profits attributable to the alleged infringement. Yet, these are plaintiff's exclusive potential recoveries under the Copyright Act. See 17 U.S.C. § 504(b).

Plaintiff, through its expert, Mr. Mills', concocts a new and novel theory of copyright damages, but there is no factual basis relied upon by the expert to support this theory. Instead, the theory assumes that the sales leads constitute actual damage to plaintiff as a result of copyright infringement. Plaintiff's theory of damages is wildly speculative and improper, and any evidence of its value should be excluded.

## II. FEDERAL RULE OF EVIDENCE, RULE 702 LEGAL STANDARD

FRE 702 provides the trial court with the necessary discretion and authority to ensure that expert testimony is both relevant and scientifically reliable. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). As a "gatekeeper," the trial court must not only broadly decide whether an expert may testify, but must also more closely address what portions of the expert testimony are admissible. Where a single expert offers several opinions, either as different steps towards the ultimate opinion or as alternative theories, each opinion must be admissible under Daubert.

The obvious reason to keep out irrelevant and unreliable opinions is that they are unable to assist the trier of fact, potentially create confusion and lack probative value. On this basis, Courts will exclude opinions that are too speculative or are founded on conjecture. Baker v. Urban Outfitters, Inc., 2003 U.S. Dist LEXIS 4801, *15 (2003) (quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2nd Cir. 1996). [cite cases] 2003 U.S. Dist LEXIS 4801, *15 (2003) (quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2nd Cir. 1996). In this vein, the Supreme Court has stressed that,

> "nothing in Daubert or the Federal Rules of Evidence requires a district court to admit opinion which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion offered."

-3-

01 CV 1800 H (JFS)

1  General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997). Moreover, courts will also exclude
2  opinions that are either contrary to law or based upon inapplicable standards of law. , Rice v.
3  Fox Broadcasting Co., 2003 U.S. App. LEXIS 10668, * 19-22 (9th Cir. May 29, 2003); Allison
4  v. McGan Med. Corp., 184 F.3d 1300 (11th Cir. 1999); Gaschler v. Scott County, 963 F. Supp.
5  971, 981-982 (D. Kan. 1997). Again, this is because these types of opinions cannot assist the
6  trier of fact and lack the requisite probative value.
7       The opinions of plaintiff's damages expert on the so-called "value" of sales leads are
8  improper and inadmissible as a matter of law. They do not represent actual damage as a result
9  of copyright infringement.

10  **III.  ALL TESTIMONY, EVIDENCE OR OPINIONS RELATED TO MR. MILL'S**
11       **THEORY OF DAMAGES RELATED TO THE VALUATION OF YOUZOOM'S**
12       **SALES LEADS IS TOO SPECULATIVE, NOT SUPPORTED BY LAW AND,**
13       **PURSUANT TO FRE 702 SHOULD BE EXCLUDED.**
14       Section 504(b) of the Copyright Act provides, in pertinent part, that:
15       "[t]he copyright owner is entitled to recover the **actual damages** . . .as a result of
16       the infringement, and any profits of the infringer that are attributable to the
17       infringement and that are not taken into account in computing actual damages. In
18       establishing the infringer's profits, the copyright owner is required to present
19       proof only of the infringer's gross revenue, and the infringer is required to prove
20       his or her deductible expenses and the elements attributable to factors other than
21       the copyrighted work."
22  Thus, notwithstanding statutory damages, the Copyright Act permits two forms of recovery:
23  actual damages and infringing profits. Plaintiff's novel theory of damages, however, that
24  purported $600,000 value of the sales leads Youzoom captures and provides to its agents is not
25  "actual damages as a result of the [alleged] infringement" in this case. This valuation is also not
26  "profits of the [alleged] infringer." [See Exhibit C, ¶ 17.]
27       To characterize plaintiff's theory as "actual damages" would clearly be pure speculation.
28  The Ninth Circuit defines "actual damages" as the "**extent to which the market value of the**

1  **copyrighted work has been injured or destroyed by an infringement."** Mackie v. Reiser,
2  296 F.3d 909, 917 (9th Cir. 2002); Frank Music Corp. v. Metro-Goldwyn-Mayer, 772 F.2d 505,
3  512 (9th Cir. 1985). Mr. Mills gives no opinions that the market value of the copyrighted work
4  in this case has been injured or destroyed. Nor does he attempt to correlate any such claim by
5  plaintiff to "sales leads" being provided by Youzoom as a service to its agents. In fact, there is
6  no effort to correlate his valuation to any proper measure of recovery related to copyright
7  infringement. He merely makes the calculation under the assumption that it's recoverable.
8  Well it's not recoverable.
9    First, the rules engine module to Arrowhead's rating software merely calculates the
10 premium for an insurance quote. Before a consumer even gets the quote, it would have had to
11 log on to an agent's website, provide detailed applicant information, and then request a quote
12 on-line. If the quote is not accepted there is no sale. Youzoom then notifies the agent that the
13 consumer logged on to their site and asked for an insurance quote. The question remains, how
14 is plaintiff's alleged copyright in its rating module actually damaged? Does plaintiff actually
15 have a damages claim to the market value of its alleged copyright based on Youzoom providing
16 sales leads to its own agents on disinterested customers? The answer is self-evident. The claim
17 is speculative and absurd, which is compounded by the fact that the value ascribed to these
18 leads of over $600,000 cannot possibly be representative of damage to the value of the alleged
19 copyright. Mr. Mills draws no such conclusions in his report, nor does he even show a value
20 associated with the copyright.[2] He simply makes the calculation.
21   Turning to remaining form of potential recovery, the profits of the alleged infringer, Mr.
22 Mills' valuation theory encounters additional problems. Section 504 requires a "legally
23 sufficient causal link" between the between the revenue and the infringement and permits
24 Courts to "reject a proffered measure of damages if it is too speculative." Mackie, supra, pp.
25 915-916. Yet, there is no actual "revenue" from the leads (even if they were attributable to
26 infringement) that was received by defendants. Mr. Mills admitted that Youzoom never

---

[2] Notably, plaintiff was paid over $100,000 for his efforts in developing the rules engine, which suggests that actual damage of over $600,000 to its alleged copyright is a patently unreliable calculation of damages.

-5-

01 CV 1800 H (JFS)

actually sold leads to their agents. [See Exhibit A at pp. 138:2-139:5, 143:5-14.] In fact, he admitted that the leads it provided do not even belong to Youzoom or Arrowhead to sale in the first place. [Id Exhibit A at pp. 138:2-19, 141:12-18.] Rather, they belong to and are given to the Youzoom insurance agent; after all the leads actually came from the agents' own websites. [Id.] Thus, any attempt by Mr. Mills to assign these leads any intrinsic value, as if it were somehow an actual revenue source for Youzoom, is improper.[3]

Plaintiff's attempted recovery would also constitute impermissible double counting. Under Mr. Mills infringing profits analysis he already includes all of Youzoom's revenue related to the sale of insurance policies and from the membership fees paid by the agents. [See Exhibit C at Schedule No. 4. identifying some $455,329 in membership fees as purportedly relevant Youzoom income.] Thus, he cannot stack on top of this some hypothetical "value" he ascribes to sales leads. To the extent Youzoom receives any revenue associated with the leads this would be included as part of the membership fees charged by Youzoom. Thus, trying to lump in a hypothetical additional value to Youzoom is completely improper. Accordingly, Mr. Mills' opinion regarding the "value of the leads" is improper and inadmissible as a matter of law. It is misleading, unreliable, hypothetical, speculative, and double counting.

///
///
///
///
///

---

[3] Equally speculative is the actual figure, $3.50, Mr. Mills calculates for each lead. Again, this value does not represent revenue derived by defendants. Instead, Mr. Mills looks to rates charged for leads by other Internet companies to come up with his purported $3.50 per lead value. [See Exhibit C at ¶ 16 & Schedule No. 5.] But it stands to reason that this can be no more reliable and no less speculative of a basis than if he had analyzed defendants' profits attributable to the infringement using revenue figures by companies comparable to Arrowhead and Youzoom instead of their actual revenue figures. There could be a thousand reasons why the rates charged by other companies should not represent the hypothetical value of Youzoom's leads, *e.g. defendants are not in the business of selling leads, the leads are not for auto insurance, defendants' costs in obtaining leads, etc.* Such a speculative theory of damages simply cannot be the kind of expert opinion that will "assist the trier of fact" in this case.

IV. <u>CONCLUSION</u>.

For the foregoing reasons, defendants Arrowhead General Insurance Agency, Inc., Youzoom, Inc. and Youzoom Insurance Services, Inc. respectfully request that this Court exclude all testimony, opinions or evidence related to plaintiff's "value of leads" theory of recovery in this case.

DATED: June 23, 2003

WESTON & McELVAIN LLP

By: _____
Richard C. Rey II
Attorneys for ARROWHEAD GENERAL INSURANCE AGENCY, INC., YOUZOOM, INC. and YOUZOOM INSURANCE SERVICES, INC.

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 888 West Sixth Street, 15th Floor, Los Angeles, California 90017.

On June 23, 2003, I served the foregoing document described as **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION IN LIMINE RE ROBERT MILLS' VALUATION OF YOUZOOM SALES LEADS** on all parties as indicated below:

> Gregory S. Dovel, Esq.
> Donald B. Rosen, Esq.
> Dovel & Luner, LLP
> 333 S. Grand Avenue, Suite 1560
> Los Angeles, CA 90071
> (213) 473-9888

[X] by placing the true copies thereof enclosed in sealed envelopes addressed as stated above.

[X] **BY MAIL as follows:** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

[ ] **BY PERSONAL SERVICE:** I caused said envelope to be delivered to the offices of the addressee as designated above.

[ ] **BY FACSIMILE:** I sent such document from facsimile machine (213) 596-8039 on. I certify that said transmission was completed and that all pages were received and that a report was generated by facsimile machine (213) 596-8039 which confirms said transmission and receipt. I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed above.

[X] (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 20, 2003, at Los Angeles, California

_____
ANNE M. MORENO